DONNA M. MEZIAS (SBN 111902)
LIZ K. BERTKO (SBN 268128)
AKIN GUMP STRAUSS HAUER & FELD LLP
580 California Street, Suite 1500
San Francisco, CA 94104
Telephone:      415-765-9500
Facsimile:      415-765-9501
dmezias@akingump.com
lbertko@akingump.com

JULIA I. DE BEERS (SBN 233811)
AKIN GUMP STRAUSS HAUER & FELD LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:      310-229-1000
Facsimile:      310-229-1001
Email:          jdebeers@akingump.com

Attorneys for Defendant CEC ENTERTAINMENT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANCHESCA FORD, individually, and on behalf of other members of the general public similarly situated,, <br><br> Plaintiffs, <br><br> v. <br><br> CEC ENTERTAINMENT, INC., a Kansas corporation; and DOES 1 through 10, inclusive,, <br><br> Defendants. | Case No. CV 14-1420 <br><br> **DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D)(2), 1441, 1446 AND 1453** <br><br> *[Filed concurrently with Declaration of Donna M. Mezias, Declaration of Lindsey P. Thomas, Declaration of David Deck, Civil Cover Sheet]* <br><br> Date Action Filed:  January 27, 2014 <br><br> (San Francisco Superior Court Case No. CGC 14-536992) |

1
Defendant's Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446 and 1453

1    TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant CEC Entertainment, Inc. ("Defendant" or "CEC") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453. In support thereof, CEC states as follows:

1. On January 27, 2014, a putative class action was commenced and is currently pending against CEC in the Superior Court of California, County of San Francisco, as Case No. CGC 14-536992, entitled *Franchesca Ford, individually, and on behalf of other members of the general public similarly situated, Plaintiff, vs. CEC Entertainment, Inc., a Kansas corporation; and Does 1 to 10, Inclusive, Defendants*. On February 26, 2014, CEC was served with the complaint. See Declaration of Donna M. Mezias in Support of Removal of Action ("Mezias Decl.") ¶ 2. Attached as Exhibit A to the Mezias Declaration is a true copy of the Summons, Complaint, Early Settlement Program, Notice to Plaintiff of Case Management Conference, ADR Information Package, and Civil Case Cover Sheet. See Mezias Decl. ¶ 2, Exh. A. Attached as Exhibit B to the Mezias Declaration is a true and conformed copy of Defendant's Answer to the Complaint, which was filed in San Francisco County Superior Court on March 26, 2014. See Mezias Decl. ¶ 3, Exh. B. There have been no further proceedings in case number CGC 14-536992, and no other pleadings have been filed and served upon Plaintiff or Defendant in this action. See Mezias Decl. ¶ 4.

2. Plaintiff Franchesca Ford is a former employee of CEC, who worked in a "Chuck E. Cheese's" restaurant in California. Complaint ¶ 26. She asserts claims for violation of California wage and overtime laws based on alleged off-the-clock work, failure to provide meal and rest breaks, failure to provide complete and accurate wage statements, failure to pay all final wages upon termination, failure to pay wages during employment, failure to provide reporting time pay, and violation of the California unfair competition laws. See Complaint ¶¶ 51, 54, 63, 65, 74, 79, 85, 95, 103, and 111. Plaintiff purports to bring these claims on behalf of a putative class that includes all non-exempt, hourly employees of CEC who work (or worked) in "Chuck E. Cheese's" restaurants in California. See Complaint ¶¶ 18, 19.

1        3.     The Complaint and Summons were served on February 26, 2014. See Mezias Decl. ¶ 2
2   & Ex. A. CEC's Notice of Removal is timely because it is filed within thirty (30) days of that service.
3   See 28 U.S.C. § 1446(b).

4        4.     **Diversity Jurisdiction**. This Court has diversity jurisdiction over Plaintiff's action
5   pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Under CAFA, federal
6   district courts have original jurisdiction over a class action if (1) it involves 100 or more putative class
7   members, (2) any class member is a citizen of a state different from any defendant, and (3) the
8   aggregated amount in controversy exceeds $5 million (exclusive of costs and interest). See 28 U.S.C.
9   §§ 1332(d)(2), (d)(5), and (d)(6).

10       5.     **Class Size**. The putative class exceeds 100 members. See Declaration of Lindsey P.
11  Thomas in Support of Notice of Removal of Action ("Thomas Decl.") ¶¶ 8, 9 (Over 4,000 putative
12  class members.)

13       6.     **Diversity of Citizenship Under CAFA**. "[U]nder CAFA, complete diversity is not
14  required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir.
15  2007). Minimal diversity exists if any class member is a citizen of a state different from any
16  defendant. 28 U.S.C. § 1332(d)(2). At all relevant times, there has been diversity of citizenship
17  between the parties to the action.

18       7.     The putative class members include citizens of the State of California. Plaintiff admits
19  that she is and was a resident of Sacramento, California. See Complaint ¶ 9. Because the time periods
20  mentioned in the Complaint include the four years prior to the filing of the Complaint, through the date
21  a class is certified (see ¶ 18), it is clear that Plaintiff is not only a past and current resident of
22  California, but intends to remain one in the future. *See Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir.
23  1986) (citizenship of an individual established by residence in the state and intent to remain
24  indefinitely). On this basis alone, the Court should find that Plaintiff is a California citizen. *See
25  Albrecht v. Lund*, 845 F.2d 193, 194-95 (9th Cir. 1988), *amended by*, 856 F.2d (9th Cir. 1988) (finding
26  citizenship requirement satisfied where plaintiff's complaint contained allegations consistent with
27  diversity and plaintiff failed to contest the petition for removal); *Adams v. Matrixx Initiatives, Inc.*, No.
28  CV-09-1529-PHX-FJM, 2009 WL 3131459, at *2 (D. Ariz. Sept. 25, 2009) (denying plaintiff's remand

1  motion and finding diversity of citizenship because plaintiff had pled diverse residency and failed to
2  produce any evidence of non-diverse citizenship).

3      8.    During her employment with CEC, Plaintiff listed her residential address in Rocklin,
4  California, and worked at the "Chuck E. Cheese's" restaurant in Roseville, California, further
5  demonstrating her California citizenship.  Thomas Decl. ¶ 5.  *See Lam Research Corp. v. Deshmukh*,
6  157 F. App'x 26, 27 (9th Cir. 2005) (defendant who had lived and worked for plaintiff in Washington
7  was presumptively a Washington citizen, despite his claim that he had changed his domicile from
8  Washington to California); *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or.
9  2012) (residential address provided by employee to employer is prima facie evidence of state
10 citizenship).

11     9.    Further, Plaintiff seeks to represent a class of all current and former employees who
12 worked in a California "Chuck E. Cheese's" restaurant in a non-exempt, hourly paid position.  More
13 than 437 of these putative class members are current employees of Defendant, have continuously been
14 employed by Defendant in California for four or more years, and maintain a California address on file
15 with the company.  Thomas Decl. ¶ 6.  These employees' long-term, continuous employment in
16 California conclusively establishes that the putative class includes California citizens.  *See Abbott v.*
17 *United Venture Capital, Inc.*, 718 F. Supp. 823, 826-27 (D. Nev. 1988) (court found that plaintiff was a
18 California citizen primarily because of continuous California residence over eight years).

19     10.    Defendant is not a citizen of the State of California.  "[A] corporation shall be deemed
20 to be a citizen of every State and foreign state by which it has been incorporated and of the State or
21 foreign state where it has its principal place of business. . . ." 28 U.S.C. § 1332(c)(1).  CEC
22 Entertainment is not incorporated in California.  Declaration of David A. Deck in Support of Notice of
23 Removal of Action ("Deck Decl.") ¶ 2.  Rather, at the time this action was commenced, CEC
24 Entertainment was and is a corporation organized and incorporated under the laws of the State of
25 Kansas.  See Complaint ¶ 10; Deck Decl., ¶ 2.  Nor is California the state in which CEC Entertainment
26 has its principal place of business.  Rather, as shown below, CEC Entertainment's principal place of
27 business is located in the State of Texas.
28

11. The Supreme Court has explained that a corporation's principal place of business is determined under the "nerve center" test. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under the "nerve center" test, the principal place of business is the state where "a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. The Supreme Court further explained in Hertz that a corporation's nerve center "should normally be the place where the corporation maintains its headquarters" and that a corporation's nerve center is a "single place." *Id*. Relevant factors include where executives reside and maintain offices, where administrative and financial offices are located, where the board of directors meets, where income tax returns are filed, and where day-to-day control over the company is executed. *AHTNA Gov't Servs. v. 52 Rausch, LLC.*, No. C 03-00130 SI, 2003 WL 403359, at *5 (N.D. Cal. Feb. 19, 2003); *State Farm Fire & Cas. Co. v. Byrd*, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989).

12. Under these criteria, CEC's principal place of business is in Texas. Deck Decl. ¶ 3. CEC maintains its corporate headquarters in Irving, Texas. *Id*. All of CEC's executive officers, including its Chief Executive Officer, President, Chief Financial Officer, Controller, and General Counsel are in Irving Texas, where they oversee and direct CEC's companywide functions. *Id*. The company regularly prepares and files its corporate income tax return from Irving, Texas. *Id.* CEC similarly prepares its securities filings in Irving, Texas. CEC's corporate records are also maintained primarily in Texas. *Id*. CEC does not maintain any corporate offices in California, and none of the aforementioned executive officers maintain their offices in California. *Id*. at ¶ 4. Accordingly, this action is between citizens of different states—Plaintiff and other putative class members, who are citizens of California, and CEC, which is a citizen of Kansas and Texas.

13. **Amount in Controversy Under CAFA**. CEC avers, for purposes of this Notice only, that Plaintiff's claims place more than $5 million in controversy. Removal is proper if, from the allegations of the Complaint and the Notice of Removal, it is more likely than not that the amount in controversy exceeds $5 million. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402-403 (9th Cir. 1996).

14. For her Sixth Cause of Action, Plaintiff alleges that CEC owes penalties for failing to pay all wages to employees upon the end of their employment, as required by Section 203 of the California Labor Code ("Labor Code"). *See* Complaint ¶¶ 83-89. Under Section 203, former employees whom an employer willfully denied wages may recover penalties in the amount of their daily rate of pay for a period of up to thirty days. See Cal. Lab. Code § 203. Plaintiff alleges that CEC did not pay all wages due upon separation, including overtime wages, minimum wages, and meal and rest period premium payments. *See* Complaint ¶ 85. Plaintiff alleges that she and putative class members were "regularly required" to work off-the-clock, "frequently" took late meal periods, "frequently" missed rest periods, and were not properly compensated in their paychecks. Complaint ¶¶ 56, 65, 74, 79. Given that Plaintiff's allegations suggest all putative class members were denied some form of proper compensation during their employment, and that the underpayment was not corrected at the end of their employment, CEC and the Court can properly assume, for amount in controversy purposes, that all former employee class members are entitled to maximum waiting time penalties under Labor Code § 203. See Complaint ¶ 85; *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008) (court may assume maximum penalty consistent with plaintiff's allegations for purposes of amount in controversy); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) (when plaintiff included no limitation on the number of violations, defendants could properly calculate the amount in controversy based on a 100% violation rate).

15. Since January 27, 2011, 4,461 of CEC's non-exempt part-time California employees have separated from the company; each of these former employees could potentially recover section 203 penalties under Plaintiff's claim. See Thomas Decl. ¶ 8. These individuals all earned at least $8.00 per hour, the minimum wage in California as of and since January 27, 2010. *Id*. ¶ 7. Based on CEC's payroll records, CEC's non-exempt part-time employees worked shifts of 5.0 hours in length. *Id*. ¶ 10. Each part-time employee's average daily pay rate is therefore $40.00. See *id*. ¶ 10 (5.0 hours per day × $8 per hour = $40 per day). Accordingly, a 30-day penalty would be at least $1,200 per person (30 days × $40.00 per day = $1,200.00). The total amount of section 203 penalties in controversy for these individuals is over $ 5.3 million. ($1,200 × 4,461 former employees= $5,353,200).

6
Defendant's Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446 and 1453

16. Since January 27, 2011, 286 of CEC's non-exempt full-time California employees have separated from the company; each of these former employees could potentially recover section 203 penalties under Plaintiff's claim.  See Thomas Decl. ¶ 9.  These individuals all earned at least $8.00 per hour, the minimum wage in California during the relevant time period.  *Id*. ¶ 7.  Based on CEC's payroll records, CEC's non-exempt full-time employees worked shifts of 8.7 hours in length. *Id*. ¶ 10.  Each full-time employee's average daily pay rate is at least $69.60.  See *id*. ¶ 10 (8.7 hours per day × $8 per hour = $69.60 per day).  Accordingly, a 30-day penalty would be at least $2,088 per person (30 days × $69.90 per day = $2,088.00), placing another $597,000 in controversy ($2,088 × 286 former employees= $597,168).

17. Thus, Plaintiff's claim for section 203 penalties alone places almost $6 million in controversy. ($5,353,200 + $597,000 = $5,950,200).

18. For her Third Cause of Action, Plaintiff alleges that she and class members were "frequently not permitted to take timely meal periods, especially on weekends when the restaurant was busier."  Complaint ¶ 65.  Under Labor Code Section 226.7, employees who are not provided proper meal periods may recover one additional hour of pay at the employee's regular hourly rate of pay for each work day that the meal period was not provided.  See Cal. Lab. Code § 226.7(c).  On Saturday, February 22, 2014, there were 1,820 non-exempt employees working in CEC stores in California.  See Thomas Decl. ¶ 11.  Assuming that employees working on a weekend day would take a late meal break at least 40 times in a year, the Third Cause of Action puts $2,329,600 in controversy.  (1,820 employees × 40 late meal periods × $8 minimum wage × 4 year statute of limitations = $2,329,600). Assuming 40 late meal periods per year amounts to a 38% violation rate on weekend days.  (40 days ÷ 104 weekend days per year = 38%).  Since Plaintiff alleges that class members "frequently" took late meal periods on weekend days, a 38% violation rate is a reasonable assumption.

19. For her Fourth Cause of Action, Plaintiff alleges that she and class members "frequently had to work through [their] ten (10) minute rest periods, especially on busy weekends…"  Complaint ¶ 74.  Under California Labor Code Section 226.7, employees who are not provided proper rest periods may recover one additional hour of pay at the employee's regular hourly rate of pay for each work day that the rest period was not provided.  See Cal. Lab. Code § 226.7(c).  Assuming the same 38%

1  violation rate, the Fourth Cause of Action puts another $2,329,600 in controversy.  (1,820 employees ×
2  40 missed rest periods × $8 minimum wage × 4 year statute of limitations = $2,329,600).

3        20.     Plaintiff's claims for missed meal and rest periods thus place $4,659,200 in controversy.
4  Thus, Plaintiff's Third, Fourth and Sixth Causes of Action place over $10 million in controversy
5  ($5,950,200+ $4,659,200 = $10,609,400).

6        21.     Considering Plaintiff's other claims for unpaid overtime, unpaid minimum wage, and
7  inadequate wage statements and her request for attorney's fees, there is well over $5 million in
8  controversy.  See *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (statutory
9  attorney's fees may be included in the amount in controversy); see also Complaint at pp. 24-29 (Prayer
10 for Relief).  Therefore, the amount in controversy requirement is satisfied.  See *Guglielmino v. McKee*
11 *Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007) (remand denied under preponderance of the
12 evidence standard where defendant's conservative estimates exceeded the requisite amount); *Deehan v.*
13 *Amerigas Partners, L.P.*, No. 08cv1009 BTM (JMA), 2008 WL 4104475, at *1 (S.D. Cal. Sept. 2,
14 2008) (amount in controversy satisfied under preponderance of the evidence standard where
15 defendant's estimated putative class size multiplied by statutory penalty for alleged violations
16 exceeded $5 million).

17       22.     There are no grounds that would justify this Court in declining to exercise its
18 jurisdiction pursuant to 28 U.S.C. § 1332(d)(3) or require it to decline to exercise jurisdiction pursuant
19 to 28 U.S.C. § 1332(d)(4).

20       23.     **Venue**.  The United States District Court for the Northern District of California is the
21 judicial district embracing the place where Case No. CGC 14-536992 was filed by Plaintiff and is
22 therefore the appropriate court for removal pursuant to 28 U.S.C. § 1441(a).

23       24.     **Other Removal Prerequisites.**  CEC has sought no similar relief with respect to this
24 matter.  Mezias Decl., ¶ 5.

25       25.     Written notice of the filing of this Notice of Removal will be given to the adverse party
26 and State court as required by 28 U.S.C. § 1446(d).

27       26.     Pursuant to 28 U.S.C. § 1446(a), Exhibits A-B to the Mezias Declaration consist of all
28 "process, pleadings, and orders" served on CEC in the State Action.  Mezias Decl., ¶¶ 2-3.

1  WHEREFORE, Defendant respectfully requests that the above action now pending against it in
2  the Superior Court of California, County of San Francisco, be removed to this Court.
3
4  Dated:  March 27, 2014                              AKIN GUMP STRAUSS HAUER & FELD LLP
5
6                                                              By        /s/ Donna M. Mezias
                                                                        DONNA M. MEZIAS
7                                                                   Attorneys for Defendant CEC
                                                                      ENTERTAINMENT, INC.
8