UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANCESCA FORD,

    Plaintiff,

v.

CEC ENTERTAINMENT, INC.,

    Defendant.

Case No. 14-cv-01420-RS

**ORDER CONTINUING HEARING AND REQUESTING FURTHER BRIEFING**

Plaintiff's motion for preliminary approval of the settlement agreement reached in this putative class action is set for hearing on February 4, 2016. While the standard for approval of such settlements is in many respects quite liberal,[1] it generally is not in the interests of the named parties or the putative class members for approval to be granted where a court has concerns that may be better addressed prior to the expense and delay of the notice process and final approval briefing.

Here, defendant has agreed to create a total "maximum" settlement fund of $2.5 million.

---

[1] A motion seeking preliminary approval of a settlement agreement in a putative class action may be granted if, "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval ...." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D.Cal.2007) (citing Manual for Complex Litigation, Second § 30.44 (1985)). Because some of the factors bearing on the propriety of a settlement cannot be assessed prior to the final approval hearing, "a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D.Cal.2008).

Plaintiff's counsel intends to request, and defendant has agreed not to oppose, a fee award of 1/3 of that total—$833,333.  Counsel will also apply for an additional $30,000 in costs. Named plaintiff Francesca Ford will seek an incentive award of $5000. Settlement administration costs are currently estimated at $65,000. Finally, because a portion of the settlement has been designated as covering claims under the California Labor Code Private Attorneys General Act ("PAGA"), the settlement calls for a $3,750 payment to the California Labor Workforce Development Agency.

Thus, if the full attorney fee and incentive payment requests were granted, the resulting net settlement fund available for payout to class members would be approximately $1,562,917, depending on the final settlement administration costs.  Plaintiff asserts this equates to an average net recovery per class member of approximately $150.

Plaintiff's brief states, in bold type, that "[t]he entire Net Settlement Amount will be disbursed to all Class Members with valid addresses and who do not opt out of the Settlement Class."  A subsequent footnote, and review of the actual settlement agreement, reveals that this claim is not quite accurate.  Rather, under provisions not discussed in plaintiff's motion, it appears that as little as 60% of the "Net Settlement Amount" may be disbursed to the class members.  See Settlement Agreement ¶ 37(d).

Additionally, the settlement agreement contemplates that in the event that uncashed settlement checks result in less than a 60% payout of the net settlement fund to class members, the difference will be "tendered" to two *cy pres* beneficiaries.  Settlement Agreement ¶ 51.  Plaintiff's motion does not address this provision or make any showing as to the identity or suitability of these proposed *cy pres* beneficiaries, even assuming *cy pres* distribution might be appropriate.[2]

Finally, paragraph 51 expressly calls for a reversion to defendant of any funds remaining after the payout to class members, any *cy pres* beneficiaries, counsel, Ford, the settlement administrator, and the California Labor Workforce Development Agency.  It appears that the

---

[2] The Court notes that both the California Industrial Relations' Unclaimed Wages Fund and/or the more general provisions of California's Unclaimed Property Law could be relevant to the propriety of distributing the proceeds of uncashed checks to *cy pres* recipients.

reversion to defendant could be as much as 40% of the net settlement fund—or approximately $625,000. Although it is not entirely clear, it seems that any reduction in the fee and incentive awards might revert to defendant, increasing that number, rather than adding to the recovery for class members.

While settlements providing for a reversion to the defendant are not necessarily prohibited, they are problematic and require further scrutiny. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011) (discussing issue in context of reversion of amounts not awarded in fees). Here, plaintiff's motion has not addressed the issue at all, instead concealing it behind the incorrect assertion that the "entire Net Settlement Amount will be disbursed to all Class Members . . . ."

Accordingly, the hearing set for February 4, 2016 is continued to March 24, 2016. The parties are directed to meet and confer to discuss whether they wish to negotiate any modifications to the settlement agreement that might address any of the concerns discussed above. No later than March 10, 2016, plaintiff shall file a supplemental brief in support of preliminary approval addressing any changes in the settlement agreement to which the parties may have agreed. To the extent not mooted by any such changes, the following issues should also be addressed: (1) the circumstances under which less than all of the net settlement fund will be allocated for distribution among class members, (2) the propriety of distributing proceeds of uncashed checks to *cy pres* beneficiaries in general, (3) the suitability of the particular *cy pres* beneficiaries proposed, and (4) the propriety of any portion of the settlement fund reverting to defendant, whether by virtue of reduced fee and incentive awards, or by other provisions of the settlement agreement.

**IT IS SO ORDERED**.

Dated: February 1, 2016

_____
RICHARD SEEBORG
United States District Judge