1  Robert J. Drexler, Jr. (SBN 119119)
   Robert.Drexler@capstonelawyers.com
2  Bevin Allen Pike (SBN 221936)
   Bevin.Pike@capstonelawyers.com
3  Jonathan Lee (SBN 267146)
   Jonathan.Lee@capstonelawyers.com
4  Capstone Law APC
   1840 Century Park East, Suite 450
5  Los Angeles, California 90067
   Telephone:  (310) 556-4811
6  Facsimile:  (310) 943-0396

7  Attorneys for Plaintiff Franchesca Ford

8

9                UNITED STATES DISTRICT COURT

10   NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

11

12  FRANCHESCA FORD, individually, and        Case No. 3:14-cv-01420-RS
    on behalf of other members of the general
13  public similarly situated,                 **NOTICE OF MOTION AND
                                                MOTION FOR FINAL APPROVAL
14              Plaintiff,                      OF CLASS ACTION SETTLEMENT;
                                                MEMORANDUM OF POINTS AND
15       vs.                                    AUTHORITIES IN SUPPORT**

16  CEC ENTERTAINMENT, INC., a                 Date:    August 11, 2016
    Kansas corporation; and DOES 1 through     Time:    1:30 p.m.
17  10, inclusive,                             Place:   Courtroom 3

18              Defendants.

19

20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 11, 2016 at 1:30 p.m., in Courtroom 3 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Richard Seeborg presiding, Plaintiff Franchesca Ford will, and hereby does, move this Court for entry of an order and judgment granting final approval of the class action settlement and all agreed-upon terms therein.  This Motion, unopposed by Defendant CEC Entertainment, Inc., seeks final approval of:  (1) the Amended Joint Stipulation of Class Action Settlement and Release; (2) settlement payments to all Class Members who did not opt out; (3) a payment to the California Labor and Workforce Development Agency; and (4) and costs/expenses to the settlement administrator, Simpluris, Inc.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Robert J. Drexler, Jr.; (4) the Declaration of Stephen Gomez; (5) the [Proposed] Order Granting Final Approval of the Class Action Settlement; (6) the [Proposed] Judgment; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.


Dated:  July 19, 2016                          Respectfully submitted,

                                               Capstone Law APC


                                       By:  _Robert J Drexler Jr._____
                                               Robert J. Drexler, Jr.
                                               Bevin Allen Pike
                                               Jonathan Lee

                                               Attorneys for Plaintiff Franchesca Ford

**TABLE OF CONTENTS**

I.   INTRODUCTION...............................................................................................1

II.  FACTS AND PROCEDURE.............................................................................3

    A.   Plaintiff Sued Defendant for Violations of the California Labor Code .............3

    B.   Plaintiff Actively Engaged in the Discovery Process ........................................4

    C.   The Parties Settled at Mediation .......................................................................5

    D.   The Proposed Settlement Fully Resolves Plaintiff's Claims .............................5

        1.   Composition of the Settlement Class.........................................................5

        2.   Settlement Consideration...........................................................................6

        3.   Release by the Settlement Class.................................................................6

    E.   The Notice and Settlement Administration Process Were Completed
        Pursuant to the Court Order ..............................................................................7

III. ARGUMENT.....................................................................................................8

    A.   The Standard for Final Approval Has Been Met ................................................8

    B.   The Proposed Settlement Is Reasonable Given the Strengths of
        Plaintiff's Claims and the Risks and Expense of Litigation...............................9

    C.   The Settlement Was Negotiated at Arm's-Length By Experienced
        Counsel With the Guidance of an Expert Mediator .........................................12

    D.   Plaintiff Conducted a Thorough Investigation of the Factual and Legal
        Issues ...............................................................................................................13

    E.   The Settlement Class Has Responded Positively to the Settlement .................13

    F.   The Proposed PAGA Payment Is Reasonable ..................................................14

    G.   The Requested Payment to the Settlement Administrator Is Reasonable
        and Should Receive Final Approval .................................................................15

IV.  CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007)...............................11

*Brown v. Fed. Express Corp.,* 249 F.R.D. 580 (C.D. Cal. 2008).......................................11

*Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004)........................14

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)............................................12

*Gonzalez v. Officemax N. Am.*, 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) ................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................................8, 9

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS
       33900 (N.D. Cal. Apr. 3, 2009) ................................................................................15

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),
       2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ..........................................12

*In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S.
       Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) .........................................................12

*Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ....................11

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008)...............................................11

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ..................................................................9

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................8, 10

*Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868 (C.D. Cal. Jan.
       17, 2013) ....................................................................................................................11

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009)...........................................10

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .........................................8

**STATE CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App.
       4th 1135 (2000).........................................................................................................14

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010)....................................................15

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(e) ................................................................................................7

**SECONDARY AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004)...................................................8

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3          On March 28, 2016, the Court entered an order granting preliminary approval of

4  the Amended Joint Stipulation of Class Action Settlement and Release,[1] and directing

5  the Settlement Administrator to mail the Notice of Class Action Settlement[2] to all Class

6  Members.  Class Members were given 60 days to submit Requests for Exclusion or

7  Objections to the Settlement.  Now that the Response Deadline has passed, Plaintiff is

8  pleased to report that: (1) not a single Class Member objected to the Settlement; (2) only

9  8 Class Members opted out of the Settlement Class (originally consisting of 10,526

10  members); (4) the average settlement payment is approximately $150; and (5) the

11  highest payment is approximately $740.  (Declaration of Stephen Gomez ["Gomez

12  Decl."] ¶¶ 8-9, 11.)

13          Plaintiff Franchesca Ford now seeks final approval of this Settlement with

14  Defendant CEC Entertainment, Inc. ("CEC" or "Defendant").  Defendant does not

15  oppose this Motion for Final Approval of Class Action Settlement.  The basic terms of

16  the Settlement provide for the following:

17          (1)    <u>Conditional Certification of a Settlement Class defined as</u>:  All current and

18                  former hourly employees employed by Defendant in California in non-

19                  exempt positions at any time from January 27, 2010 through March 24,

20                  2016.

21          (2)    <u>Monetary Relief</u>:  A Maximum Settlement Amount of $2,500,000.  The

22                  Maximum Settlement Amount includes:

23                  (a)    A Net Settlement Amount (the Maximum Settlement Amount

24                          minus the requested Attorneys' Fees and Costs, Settlement

25                          Administration Costs, the payment to the California Labor and

26  ───────────────
[1] Hereinafter, "Settlement" or "Settlement Agreement."  Unless indicated
27  otherwise, all capitalized terms used herein have the same meaning as those defined by
the Settlement Agreement.
28  [2] Hereinafter, the "Class Notice."

Workforce Development Agency ("LWDA"), and the requested Class Representative Enhancement Payment), which will be allocated to Class Members—automatically and without a claims process—on a pro-rata basis according to the number of weeks that each Class Member worked during the Class Period. The entire Net Settlement Amount will be disbursed to all Class Members who do not opt out of the Settlement Class. Class Members will have 120 days to cash their checks. If after 120 days, the sum of all cashed checks is less than 90% of the Net Settlement Amount, then the amount necessary to reach 90% of the Net Settlement Amount will be re-allocated on a pro-rata basis to those remaining Class Members who did not opt out. Funds representing uncashed checks of 10% or less of the Net Settlement Amount will revert to Defendant.

(b)     Plaintiff will request, and Defendant will not oppose, an award of attorneys' fees and costs of $833,333 and $14,000, respectively, to Capstone Law APC ("Plaintiff's Counsel");

(c)     Settlement Administration Costs of $69,043, to be paid to the class action settlement administrator Simpluris, Inc. ("Simpluris");

(d)     A $3,750 payment to the California Labor Workforce Development Agency ("LWDA") pursuant to the Labor Code Private Attorneys General Act ("PAGA"); and

(e)     Plaintiff will request, and Defendant will not oppose, a Class Representative Enhancement Payment of $5,000 to Franchesca Ford for her service on behalf of the Settlement Class and for a general release of all claims arising out of her employment with Defendant.

(3)     <u>Non-Monetary Relief</u>: In addition to the above monetary relief, the

Settlement requires Defendant to implement a process to pay premium pay to hourly employees in California who are denied a meal period required under California law.

An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement Class' behalf is fair, reasonable, and valuable. The Parties negotiated the Settlement at arm's length with helpful guidance from Michael Loeb of JAMS, an experienced and well-respected class action mediator. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*). The proposed relief is arguably superior to the relief that the Class might have obtained after a successful trial because, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial. Moreover, all 10,518 participating Class Members will, following final approval, be mailed their settlement checks without any further action required on their part.

Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Class Members, Plaintiff respectfully requests that the Court grant this Motion for Final Approval of the Settlement Agreement and retain jurisdiction to enforce the Settlement.

## II.    FACTS AND PROCEDURE

### A.    Plaintiff Sued Defendant for Violations of the California Labor Code

Plaintiff Franchesca Ford was employed by CEC as a cashier at Defendant's Chuck E. Cheese restaurant in Roseville, California. Ms. Ford worked for CEC from August 2012 to February 2013. Plaintiff filed this action on January 27, 2014 in the Superior Court of the State of California for the County of San Francisco. Defendant removed the matter to the United States District Court for the Northern District of California on March 27, 2014.

Plaintiff chiefly alleges that CEC: (1) understaffs its California restaurants, and

1   due to insufficient coverage, employees are forced to work through their meal and rest

2   breaks to serve customers; and (2) requires cashiers to be present when a manager counts

3   their cash drawer at the end of every shift, and yet has no written policy or guideline

4   indicating that these inspections should take place while clocked-in.  Based on these

5   allegations, Plaintiff alleges that CEC  failed to pay Class Members for all hours worked,

6   including overtime (Labor Code sections 1194, 1197, 1197.1, 510 and 1198), failed to

7   pay all meal and rest period premiums owed (Labor Code sections 226.7 and 512), failed

8   to timely pay all wages owed to employees during employment (Labor Code section

9   204), failed to timely pay all wages owed to employees upon termination (Labor Code

10  sections 201 and 202), and issued inaccurate wage statements to employees (Labor Code

11  section 226(a)).

12          **B.      Plaintiff Actively Engaged in the Discovery Process**

13          Beginning shortly after the action was filed and continuing over the next 1.5

14  years, Plaintiff's Counsel thoroughly investigated and researched the claims in

15  controversy, their defenses, and the developing body of law.  The investigation included

16  the exchange of information pursuant to formal and informal discovery methods.  In

17  response to this discovery, Plaintiff received, among other things, the following

18  information and evidence with which to properly evaluate her claims:  (1) Class Member

19  demographic information (e.g., information bearing on the class size); (2) CEC's written

20  cash handling procedures and timekeeping policies relevant to the cash register

21  inspection claim; (3) CEC's written meal and rest period policies relevant to the meal

22  and rest period claims; and (4) time and payroll records for putative Class Members,

23  with entries dating from January 1, 2010 through December 31, 2014.  Using this

24  information, Plaintiff's Counsel were able to determine (or estimate), *inter alia*: (i) the

25  average hourly rate of pay for Class Members; (ii) the total approximate number of Class

26  Members who worked during the Class Period; (iii) the number of shifts with possible

27  meal and rest periods violations; and (iv) the respective number of pay periods for

28  purposes of calculating wage statement and PAGA penalties.  (Declaration of Robert J.

Drexler, Jr. ["Drexler Decl."] ¶ 4.)

Overall, Plaintiff's Counsel performed an extensive investigation into the claims at issue, which included:  (1) determining the suitability of the putative class representative, through interviews, background investigations, and analyses of her employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) engaging in the discovery process; (4) obtaining and analyzing CEC's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) conducting discounted valuation analyses of claims; (8) drafting the mediation brief; (9) negotiating the terms of this Settlement; (10) finalizing the Joint Stipulation of Class Action Settlement and Release and Amended Joint Stipulation of Class Action Settlement and Release; and (11) and drafting preliminary and final approval papers.  The sizeable document and data exchanges allowed Plaintiff's Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement.  (Drexler Decl. ¶ 5.)

### C.     The Parties Settled at Mediation

On May 6, 2015, and May 22, 2015, the Parties participated in full-day mediation sessions with Michael Loeb of JAMS, a respected mediator of wage and hour class actions.  With Mr. Loeb's expert guidance, the Parties were able to negotiate a settlement of Plaintiff's claims.  The terms of the Parties' settlement are now set forth in complete and final form in the Settlement Agreement.  At all times, the Parties' negotiations were adversarial and non-collusive.  The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue.  (Drexler Decl. ¶ 6.)

### D.     The Proposed Settlement Fully Resolves Plaintiff's Claims

#### 1.     Composition of the Settlement Class

The proposed Settlement Class consists of all current and former hourly employees employed by Defendant in California in non-exempt positions at any time from January 27, 2010 through March 24, 2016.  (Amended Settlement Agreement ¶ 5.)

### 2.      Settlement Consideration

Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for the Maximum Settlement Amount of $2,500,000.  The Maximum Settlement Amount includes:  (1) settlement payments to all Class Members who did not opt out; (2) Plaintiff's request for $833,333 in attorneys' fees and $14,000 in litigation costs/expenses; (3) a $3,750 payment to the LWDA; (4) settlement administration costs of $69,043; and (5) a requested Class Representative Enhancement Payment of $5,000 to Franchesca Ford for her service on behalf of the Settlement Class and for a general release of all claims arising out of her employment with Defendant.  (Amended Settlement Agreement ¶¶ 14, 32-36.)

Subject to the Court approving Attorneys' Fees and Costs, the payment to the LWDA, Settlement Administration Costs, and the Class Representative Enhancement Payment, the entire Net Settlement Amount will be paid to Class Members who did not opt out, and without a claims process.  (Amended Settlement Agreement ¶ 36.)  Each Class Member's share of the settlement will be proportional to the total number of weeks he or she worked during the Class Period.  (Settlement Agreement ¶¶ 28-29, 36.)  The number of weeks worked was determined from Defendant's records, although Class Members were given an opportunity to challenge those records.  (*Id.* at ¶ 43.)

In addition to the above monetary relief, the Settlement requires Defendant to implement a process to pay premium pay to hourly employees in California who are denied the opportunity to take a meal period as required under California law.  (Amended Settlement Agreement ¶ 51.)  This policy change will have a significant impact on current and future employees, and is intended to ensure greater compliance with the Labor Code.

### 3.      Release by the Settlement Class

In exchange for the Maximum Settlement Amount, Plaintiff and Class Members who do not opt out will agree to release the Released Parties for the Released Claims.  (Amended Settlement Agreement ¶ 21.)  The Released Claims are those that accrued

1   during the period from January 27, 2010 through March 24, 2016.  (*Id.* at ¶ 22.)

2   **E.   The Notice and Settlement Administration Process Were Completed**

3   **Pursuant to the Court Order**

4   As authorized by the Court's Order preliminarily approving the Settlement

5   Agreement, the Parties engaged Simpluris to provide settlement administration services.

6   (Gomez Decl. ¶ 2.)  Simpluris' duties have included:  (1) printing and mailing Class

7   Notices, (2) receiving and logging undeliverable Class Notices, (3) processing Requests

8   for Exclusion, (4) calculating settlement payments (this will include distribution of funds

9   and tax-reporting following final approval), and (5) answering questions from Class

10  Members.  (*Id.*)

11  On March 29, 2016, Simpluris received the Class Notice prepared jointly by

12  Plaintiff's Counsel and counsel for Defendant and approved by the Court.  (Gomez

13  Decl. ¶ 3.)  The Class Notice summarized the Settlement's principal terms, provided

14  Class Members with an estimate of how much they would be paid if the Settlement

15  received final approval, and advised Class Members how to opt out or object to the

16  Settlement.  (*Id.*, Ex. A.)

17  Counsel for Defendant subsequently provided Simpluris with a mailing list (the

18  "Class List") including each Class Member's full name, last known address, Social

19  Security Number, and information necessary to calculate payments.  (*Id.* at ¶ 3.)  The

20  mailing addresses contained in the Class List were processed and updated using the

21  National Change of Address Database maintained by the U.S. Postal Service.  (*Id.* at ¶

22  4.)  Class Notices were mailed on May 13, 2016.  (*Id.*)  In total, 745 Class Notices were

23  returned to Simpluris as undeliverable and without forwarding addresses.  Using skip-

24  traces, Simpluris was able to find addresses for 573 of the returned Class Notices, which

25  were promptly re-mailed by Simpluris following the skip-traces.  (*Id.* at ¶ 5.)  Ultimately,

26  172 Class Notices were unable to be delivered to the intended Class Members, an

27  undeliverable rate of 1.63% (or 172 out of 10,526 Class Notices).

28  Class Members were given until July 12, 2016 to submit Requests for Exclusion

1   or Objections to the Settlement.  Plaintiff is pleased to report that only 8 Class Members

2   submitted timely and valid Requests for Exclusion and not a single Class Member

3   objected to the Settlement.  (Gomez Decl. ¶¶ 8-9.)

4   **III.   ARGUMENT**

5       **A.     The Standard for Final Approval Has Been Met**

6       A class action may only be settled, dismissed, or compromised with the Court's

7   approval.  Fed. R. Civ. Proc. 23(e).  The process for court approval of a class action

8   settlement is comprised of three principal stages:

9       Preliminary Approval:  The proposed settlement agreement is preliminarily

10  reviewed by the Court for fairness, adequacy, and reasonableness.  If the Court believes

11  the settlement falls within the range of reasonableness, such that proceeding to a formal

12  fairness hearing is warranted, it orders notice of the settlement disseminated to the class.

13  *See* Manual for Complex Litigation § 21.632 (4th ed. 2004).

14      Class Notice:  Notice of the settlement is disseminated to the class, giving class

15  members an opportunity to object to the settlement's terms or preserve their right to

16  bring an individual action by opting out.  *See id.*, § 21.633.

17      Final Approval:  A formal fairness or final-approval hearing is held by the Court,

18  at which class members can be heard regarding the settlement, and at which evidence

19  and argument concerning the fairness, adequacy, and reasonableness of the settlement is

20  presented.[3]  Following the hearing, the Court decides whether to approve the settlement

21  and enter a final order and judgment.  *See id.*, § 21.634.

22  _____
    [3] A proposed class action settlement may be approved if the Court, after allowing
23  absent class members had an opportunity to be heard, finds that the settlement is "fair,
    reasonable, and adequate."  In making this determination, "the court's intrusion upon
24  what is otherwise a private consensual agreement negotiated between the parties to a
    lawsuit must be limited to the extent necessary to reach a reasoned judgment that the
25  agreement is not the product of fraud or overreaching by, or collusion between, the
    negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and
26  adequate to all concerned."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.
    2009) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also*
27  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)
    ("voluntary conciliation and settlement are the preferred means of dispute resolution.
28  This is especially true in complex class action litigation . . . .").

1  The first two steps have been the completed.  The Court has preliminarily

2  reviewed the proposed settlement for fairness and found it to be within the range of

3  reasonableness meriting court approval.  (*See* March 28, 2016, Order Granting

4  Preliminary Approval of Class Settlement, Dkt. No. 53.)  In addition, the Settlement

5  Administrator has notified Class Members of the proposed settlement and upcoming

6  fairness hearing as directed by the Court.  (*See generally* Gomez Decl.)  Plaintiff now

7  asks the Court to grant final approval of the proposed settlement.

8  The decision about whether to approve the proposed settlement is committed to

9  the sound discretion of the trial judge, and will not be overturned except upon a strong

10  showing of a clear abuse of discretion.  *Hanlon*, 150 F.3d at 1026-1027.  The Ninth

11  Circuit has set forth a list of non-exclusive factors that a district court should consider in

12  deciding whether to grant final approval, namely: (1) the strength of plaintiffs' case, and

13  the risk, expense, complexity, and likely duration of further litigation; (2) the risk of

14  maintaining class action status throughout the trial; (3) the amount offered in settlement;

15  (4) the extent of discovery completed, and the stage of the proceedings; (5) the

16  experience and views of counsel; and (6) the reaction of the class members to the

17  proposed settlement.  *Id.* at 963 (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir.

18  2003)).

19  These factors, which are discussed below, confirm that the proposed Settlement is

20  more than fair, reasonable, and adequate for Class Members.  The Settlement provides

21  considerable value; Class Members need not bear the risk and delay associated with trial

22  proceedings to obtain these benefits; and the settlement has been met with substantial

23  support and no opposition from Class Members.

24  **B.**    **The Proposed Settlement Is Reasonable Given the Strengths of**

25  **Plaintiff's Claims and the Risks and Expense of Litigation**

26  In assessing the probability and likelihood of success, "the district court's

27  determination is nothing more than an amalgam of delicate balancing, gross

28  approximations, and rough justice."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

1    615, 625 (9th Cir. 1982) (internal quotation marks omitted).  There is "no single

2    formula" to be applied, but the court may presume that the parties' counsel and the

3    mediator arrived at a reasonable range of settlement by considering plaintiff's likelihood

4    of recovery.  *Rodriguez v. West Pub. Corp*., 463 F.3d 948, 965 (9th Cir. 2009).

5           Plaintiff was cautiously optimistic about the chances of certifying the putative

6    Class and of prevailing at trial.  Nevertheless, Plaintiff recognizes that if the litigation

7    had continued, she may have encountered significant legal and factual hurdles that could

8    have prevented the Settlement Class from obtaining any recovery.  For example,

9    although a number of cases have found wage and hours actions to be especially

10   amenable to class resolution,[4] a conspicuous few have gone the other way, finding that

11   some of the very claims at issue here were not suitable for class adjudication because

12   they raised too many individualized issues.  *See Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th

13   1333, 1341 (2009) (denying certification because employees' declarations attesting to

14   having taken meal and rest breaks demonstrated that individualized inquiries were

15   required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS

16   137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying

17   certification of proposed off-the-clock and rest and meal break classes due to lack of

18   _____

19   [4] *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012)
     ("Claims alleging that a uniform policy consistently applied to a group of employees is

20   in violation of the wage and hour laws are of the sort routinely, and properly, found
     suitable for class treatment . . .  The theory of liability – that [the employer] has a

21   uniform policy, and that that policy, measured against wage order requirements,
     allegedly violates the law - is by its nature a common question eminently suited for class

22   treatment.").  Litigation of wage and hour claims on class-wide bases (1) encourages the
     vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th 77, 82 (2006)); (2)

23   "eliminates the possibility of repetitious litigation" (*Sav-On Drug Stores, Inc. v. Super.
     Ct.*, 34 Cal. 4th at 340); (3) affords small claimants a method of obtaining redress (*id.*);

24   (4) "deter[s] and redress[es] alleged wrongdoing" (*Jaimez v. Daiohs USA, Inc.*, 181 Cal.
     App. 4th 1286, 1298 (2010)); (5) "avoid[s] windfalls to defendants" (*Brinker*, 53 Cal.

25   4th at 1054); (6) avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp.
     No. 2*, 144 Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees

26   about retaliation (*Gentry v. Super. Ct.*, 42 Cal. 4th 443, 462-63 (2007); *Jaimez v. Daiohs
     USA, Inc.*, 181 Cal. App. 4th at 1308).  These policies are so strongly favored that "class

27   certifications should not be denied [in wage and hour cases] so long as the absent class
     members' rights are adequately protected."  *Richmond v. Dart Industries, Inc.*, 29 Cal.

28   3d 462, 474 (1981).

1    uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal.

2    Apr. 18, 2012) (denying motion to certify meal and rest break classes based on

3    employer's practice of understaffing and overworking employees); *Gonzalez v.*

4    *Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same);

5    *Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying

6    certification of driver meal and rest period claims based on the predominance of

7    individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008)

8    (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245

9    F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual

10   issues predominated when different employee stations provided different practices with

11   respect to meal periods).

12        Some courts have denied certification even when an employer's policies are

13   arguably unlawful on their face.  For instance, in *Ordonez v. Radio Shack, Inc.*, 2013

14   U.S. Dist. LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013), the court denied certification

15   even though the plaintiff submitted evidence of a facially unlawful policy regarding rest

16   breaks.  The *Ordonez* court concluded that the predominance and superiority elements

17   were not met based on the employer's presentation of anecdotal evidence of lawful

18   compliance notwithstanding the arguably unlawful policy.  *Id.* at *38-40.

19        These diverse outcomes are vivid illustrations of the uncertainty of class

20   certification in wage and hour cases.  It follows that even a relatively strong case on the

21   merits may not be certified.  This reality added to the risk of continued litigation

22   militated in favor of settlement.  Indeed, it is usually preferable to reach an early

23   resolution of a dispute because such resolutions save time and money that would

24   otherwise go to litigation.  For example, if this action had settled following additional

25   litigation, the settlement amount would likely have taken into account the additional

26   costs incurred, and there may have been less available for Class Members.

27        Moreover, if the Court denied Plaintiff's forthcoming motion for class

28   certification, the value of Plaintiff's case would have been considerably reduced, indeed,

1   Defendant would have likely offered *no* money to settle the class-wide claims.  As a

2   general matter, the value of class claims is largely dependent on the size of a putative

3   class.  Prior to certification, there is no actual class, only a prospective class.  The value

4   of the claims asserted on their behalf is estimated by calculating the maximum damages

5   in the aggregate based on the available evidence and then discounting by the chances of

6   the court denying certification, the chances of losing at trial, and the chances of winning

7   at trial but losing on appeal.  Naturally, if the court denies certification, there is no class

8   and to the extent any value remains in the case, it derives almost entirely from the value

9   of a plaintiff's individual claims. And, of course, even if a motion for class certification

10  is granted there is the risk of decertification and the possibility that the claims will fail on

11  their merits.

12          In summary, although Plaintiff and her counsel maintained a strong belief in the

13  underlying merits of the claims, they also acknowledge the significant challenges posed

14  by continued litigation through certification and/or at trial.  Accordingly, when balanced

15  against the risk and expense of continued litigation, the settlement is fair, adequate, and

16  reasonable.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the

17  very essence of a settlement is compromise, a yielding of absolutes and an abandoning

18  of highest hopes").

19          **C.      The Settlement Was Negotiated at Arm's-Length By Experienced**

20                  **Counsel With the Guidance of an Expert Mediator**

21          The Parties participated in mediation with Michael Loeb, a respected mediator of

22  wage and hour class actions.  Mr. Loeb helped to manage the Parties' expectations and

23  provided a useful, neutral analysis of the issues and risks to both sides.  *In re Apple*

24  *Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS

25  108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against

26  any inference of a collusive settlement), *In re Atmel Corp. Derivative Litig.*, No. C 06-

27  4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) (same);

28  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement

1  in pre-certification settlement negotiations helps to ensure that the proceedings were free

2  of collusion and undue pressure."). At all times, the Parties' negotiations were

3  adversarial and non-collusive.

4      The Parties were represented by experienced class action counsel throughout the

5  negotiations resulting in this Settlement. Plaintiff is represented by Capstone Law APC.

6  Capstone, which seeks appointment as Class Counsel, employs seasoned class action

7  attorneys who regularly litigate wage and hour claims through certification and on the

8  merits, and have considerable experience settling wage and hour class actions. (Drexler

9  Decl. ¶¶ 7-12.)

10      Defendant is represented by Akin Gump Strauss Hauer & Feld, a nationally

11  recognized firm with a prominent wage and hour defense practice.

12      **D.**    **Plaintiff Conducted a Thorough Investigation of the Factual and**

13          **Legal Issues**

14      As set forth in greater detail above, based on their analysis of documents

15  produced by Defendant (including putative class member time and wage records),

16  Plaintiff's Counsel were able to realistically assess the value of Plaintiff's claims and

17  intelligently engage defense counsel in settlement discussions that culminated in the

18  proposed settlement now before the Court. (Drexler Decl. ¶¶ 4-6.)

19      By engaging in a thorough investigation, evaluation of Plaintiff's claims,

20  Plaintiff's Counsel can knowledgeably opine that the Settlement, for the consideration

21  and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate,

22  and is in the best interests of Class Members in light of all known facts and

23  circumstances, including the risk of significant delay and uncertainty associated with

24  litigation, and various defenses asserted by Defendant.

25      **E.**    **The Settlement Class Has Responded Positively to the Settlement**

26      The Class Members' response demonstrates their support for this settlement.

27  Only 8 Class Members opted out of the Settlement Class and not a single Class Member

28  objected to the Settlement. (Gomez Decl. ¶¶ 8-9.) A low number of opt outs and

1   objections is a strong indicator that a settlement is fair and reasonable. *7-Eleven Owners*

2   *for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class

3   response favorable where "[a] mere 80 of the 5,454 national class members elected to

4   opt out  [(1.5% of the entire Class)] and . . . [a] total of nine members . . . objected to the

5   settlement); *Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004)

6   (affirming settlement approval where 45 of approximately 90,000 notified class

7   members objected and 500 opted out).  The Class Members' response here—both in the

8   low rate of opt-outs and the complete absence of objectors—compares favorably to

9   those cases and warrants final approval.

10   The average Class Member recovery of $150 compares favorably to other wage

11   and hour class action settlements for similar claims on behalf of non-exempt employees.

12   *See*, *e.g.*, *See*, *e.g.*, *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San

13   Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v.*

14   *Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of

15   approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253

16   (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v.*

17   *Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.)

18   (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No.

19   CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of

20   approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD

21   (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores,*

22   *Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of

23   approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A.

24   Super. Ct.) (average net recovery of approximately $20).

25   **F.    The Proposed PAGA Payment Is Reasonable**

26   Pursuant to the Settlement Agreement, $5,000 from the Maximum Settlement

27   Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($3,750)

28   will be paid directly to the LWDA.  (Amended Settlement Agreement ¶ 35.)  This result

1   was reached after good-faith negotiation between the parties.  Where PAGA penalties

2   are negotiated in good faith and "there is no indication that [the] amount was the result of

3   self-interest at the expense of other Class Members," such amounts are generally

4   considered reasonable.  *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S.

5   Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*,

6   186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in

7   approving a settlement which does not allocate any damages to the PAGA claims.").

8        **G.    The Requested Payment to the Settlement Administrator Is**

9              **Reasonable and Should Receive Final Approval**

10      Plaintiff requests final approval of settlement administration costs in the amount

11  of $69,043.  (Gomez Decl. ¶ 13.)  Simpluris has promptly and properly distributed the

12  Class Notice to all Class Members and completed its duties in accordance with the

13  settlement terms and the Court's preliminary approval Order.  (*See generally* Gomez

14  Decl.)  Accordingly, the $69,043 payment is fair and reasonable and should be accorded

15  final approval along with the rest of the Settlement terms.

16  **IV.    CONCLUSION**

17      The Parties have negotiated a fair and reasonable settlement of a case that

18  provides relief that likely would never have been realized but for this class action.

19  Accordingly, final approval of the Settlement should be granted.

20

21  Dated:  July 19, 2016                Respectfully submitted,

22                                       Capstone Law APC

23

24  By: _____

25      Robert J. Drexler, Jr.
        Bevin Allen Pike
        Jonathan Lee

26      Attorneys for Plaintiff Franchesca Ford

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT